United States District Court
Southern District of Texas
**ENTERED**
December 13, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID RODRIGUEZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 4:16-CV-245 |
| | § | |
| FLOWERS FOODS, INC., *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Second Amended Motion for Conditional Certification. (Doc. No. 45.) After considering the Motion, the responses thereto, and all applicable law, the Court determines that the Motion should be granted.

### I.   BACKGROUND

Plaintiffs[1] are distributors for Defendants Flowers Foods, Inc. and Flowers Baking Co. of Houston, LLC (a subsidiary of Flowers Foods, Inc.). In their capacity as distributors, Plaintiffs order and merchandise Defendants' products and deliver the products to retailers within a defined geographic area. *See, e.g.*, Amos Decl. ¶ 3. They also bring back products that do not sell. *Id*. Plaintiffs allege that they are employees who were misclassified as independent contractors. As such, they have filed this collective action under the Fair Labor Standards Act (FLSA) alleging that they are owed overtime compensation.

Plaintiffs have moved for conditional certification of a class consisting of "all individuals who, at any point, during the past three years prior to the filing of this lawsuit, performed work

---

[1] The Complaint in this case was filed by six Plaintiffs (hereinafter "the named Plaintiffs"). After the Complaint was filed, six additional individuals opted into the lawsuit. Subsequently, all of the named Plaintiffs dismissed their claims. Three of the six opt-in Plaintiffs also dismissed their claims. As a result, there are currently three individuals in the lawsuit, all of them opt-in Plaintiffs: Aaron Lowe, Tonnial Amos, and Ricardo Maldonado.

for Defendants as distributors and who did not receive overtime pay and who did not hire any assistants or helpers."[2] (Doc. No. 45 at 8). Defendants oppose any conditional certification in this case. (Doc. No. 50.) Alternatively, Defendants request that any class certification be limited to distributors operating out of two warehouses. *Id*. Defendants further request that, if the class is conditionally certified, certain changes be made to the proposed notice. *Id*.

## II.   LEGAL STANDARDS

### A.  The *Lusardi* approach to FLSA collective action certification

On motions for collective action certification in FLSA cases, the Fifth Circuit has affirmed district courts' use of the lenient standard adopted by the United States District Court for the District of New Jersey in *Lusardi v. Xerox Corp*., 118 F.R.D. 351 (D.N.J. 1987). *See, e.g.*, *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–16 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). The *Lusardi* approach includes two steps: (1) the plaintiff's motion for conditional certification, and (2) the defendant's motion for decertification.

At the first stage, the Court must decide whether notice of the action should be given to potential class members. *Id*. at 1213–14. The court's decision at this stage is usually based on the pleadings and affidavits that have been submitted, and is made using a "fairly lenient standard, [which] typically results in 'conditional certification' of a representative class." *Id*. at 1214.  A plaintiff may proceed collectively only if the challenged conduct is a generally applicable rule, policy, or practice. *McKnight v. D.Houston, Inc*., 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). Therefore, conditional certification should be denied when the action arises from circumstances

---

[2] A separate FLSA collective action, *Zapata v. Flowers Foods*, 4:16-cv-676, seeks to certify a class that includes distributors who did hire assistants or helpers.

purely personal to the plaintiff. *Id.*

In order to obtain conditional certification, the plaintiff must make a "minimal showing" that: (1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) those individuals want to opt in to the lawsuit. *Aguirre v. SBC Comms., Inc.*, No. H–05–3198, 2006 WL 964554, at *6 (S.D. Tex. April 11, 2006). Conclusory allegations that other employees are similarly situated are insufficient to justify conditional certification. *Vargas v. HEB Grocery Co., L.P.*, No. SA-12-CV-116-XR, 2012 WL 4098996, at *4 (W.D. Tex. Sept. 17, 2012).

To show that there are similarly situated employees, a plaintiff would ideally produce affidavits from potential class members affirming their intention to join the lawsuit. *McKnight v. D.Houston, Inc.*, 756 F. Supp. 2d 794,805 (S.D. Tex. 2010). Such affidavits are not required, however. The Southern District of Texas has stated that a plaintiff is required to show that "*at least a few* similarly situated individuals seek to join the lawsuit." *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (emphasis added). This has been interpreted to mean that a plaintiff need not procure individuals who intend to join the lawsuit (but have not yet done so), as long as the plaintiff can show that multiple individuals have taken an interest in the lawsuit. Thus in *Prater v. Commerce Equities Management Co.*, No. H-07-2349, 2007 WL 4146714, at *8 (S.D. Tex. Nov. 19, 2007), the court granted conditional certification on the basis of three affidavits from individuals who were already named plaintiffs in the case. The court emphasized that only one of the plaintiffs initiated the lawsuit, and the other two subsequently joined. *Prater*, 2007 WL 4146714, at *8. Similarly, in *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 472 (S.D. Tex. 2012), the court granted conditional

certification despite the lack of affidavits from potential plaintiffs because "[t]he litigation ha[d] already attracted numerous new Plaintiffs." This standard makes sense in light of *Lusardi*'s two-step approach to FLSA collective action certification: "[t]he best way to determine whether a party is interested in joining a lawsuit is to send her notice and allow her to opt in. Indeed, requiring that multiple potential class members affirm their intention to join the suit before notice is issued would require plaintiffs or their counsel to solicit opt-in plaintiffs without the benefit of court-approved notice—which defeats the purpose of this stage of the litigation." *Harris v. Hinds Cnty., Miss.*, No. 3:12-cv-00542-CWR-LRA, 2014 WL 457913, at *3 (S.D. Miss. Feb. 4, 2014).

If the proposed class definition includes alleged employees who are not similarly situated, the Court has the power to modify an FLSA collective action definition on its own. *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, CIV. A. H–08–1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec.11, 2008) (citing *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005)).

The second stage of the *Lusardi* approach is usually prompted by a defendant's motion for decertification after some or all discovery has been completed. At that time, a court considers additional evidence submitted by the parties in determining whether to decertify the class on the ground that its members are not similarly situated. *Id.*

### B.  The economic realities test

To determine whether a worker is an employee or an independent contractor for purposes of the FLSA, courts in the Fifth Circuit use the economic realities test. The test includes "five, non-exclusive factors: (a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the

worker's opportunity for profit and loss is determined by the alleged employer." *Andel v. Patterson–UTI Drilling Co., LLC*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (quoting *Thibault v. Bellsouth Telecommunications, Inc.,* 612 F.3d 843, 846 (5th Cir. 2010)).

Courts are split as to whether the economic realities test should be used when determining whether to conditionally certify an FLSA action concerning an allegedly wrongful independent contractor designation. *Compare Gonzalez v. Tier One Sec., Inc.,* No. SA–12–CV–806–XR, 2013 WL 1455587, at *2 (W.D. Tex. Apr.8, 2013), *and Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 471 (S.D. Tex. 2012) ("the economic factors test is likely not appropriate for determination at the first stage of FLSA class certification."), *with Christianson v. NewPark Drilling Fluids, LLC*, No. CIV.A. H–14–3235, 2015 WL 1268259, at *4 (S.D.Tex. Mar.19, 2015) *and Andel v. Patterson–UTI Drilling Co., LLC,*280 F.R.D. 287, 290 (S.D.Tex. 2012). Courts that disfavor the use of the economic realities test at the conditional certification stage typically say that the test goes to the merits of the case, not collective action certification. *See, e.g.*, *Jones v. JGC Dallas LLC,* No. 3:11–CV–2743–O, 2012 WL 6928101, at *4 (N.D.Tex. Nov. 29, 2012) (economic realities test argument "is a merits-based argument, and courts are not to engage in merits-based analysis at the notice stage of a collective action."); *Putnam v. Galaxy 1 Marketing, Inc.,* 276 F.R.D. 264, 274 (S.D. Iowa 2011) ("Making a determination, at [the conditional certification stage], of whether the satellite installation technicians were independent contractors or employees pursuant to the 'economic realities' test, would also improperly delve into the merits of Plaintiffs' claim."). The Court agrees with this analysis and finds that the economic factors test is not appropriate at the first stage of FLSA class certification.

## III.    ANALYSIS

### A.  Plaintiffs have satisfied the requirements for conditional certification under *Lusardi*.

Plaintiffs argue that Defendants' practice of paying all distributors on a commission basis rather than paying overtime is a single practice that justifies collective treatment of all distributors within the proposed class. (Doc. No. 45 at 3.) In support of their Motion, Plaintiffs provide declarations from two of the three remaining opt-in Plaintiffs (Tonnial Lovell Amos and Aaron Michael Lowe), as well as a declaration from Gregory Edel, one of the original named Plaintiffs who has since dismissed his claims. (Doc. No. 35-2.) The declarations (which have almost identical wording) assert that the declarants regularly worked over 40 hours per week without overtime compensation. (Doc. No. 45 at 4.) They also assert that Defendants control many aspects of their distribution work, including negotiating the terms of sales to retail customers. *See, e.g.*, Amos Decl. ¶¶ 5, 8. They further allege that Defendants required the declarants to wear a Flowers branded uniform and prohibited declarants from carrying competing products in delivery vehicles. *Id*. ¶¶ 15, 16. The declarants assert that their customers paid Flowers directly, and Flowers paid the declarants. *Id*. ¶ 9. Each of the declarations contains the following statement: "I believe other current and former employees would be interested in joining this suit if they were made aware of it." *Id*. ¶ 20.

In response, Defendants provide six declarations from distributors who view themselves as independent contractors, not employees, and who prefer the independent contractor designation. (Doc. No. 50-1, Exhibits 7-12). These declarants express a preference for operating as independent contractors, citing the freedom and flexibility of independent contractor status. The declarants also allege various facts supporting independent contractor status under the

6

economic realities test, including performance of distributor services through a corporate entity,[3] authority to hire employees to help perform distributor services (Defendants' approval not required),[4] control over opportunities for profit and loss,[5] authority to change prices on products sold in some circumstances,[6] authority to extend credit to customers,[7] authority to determine what products to order,[8] freedom to select delivery vehicle,[9] no requirement by Defendants to wear a uniform (though some *customers* require that the distributor wear a uniform),[10] and freedom to set their own hours.[11]

The Court finds that Plaintiffs have made the "minimal showing" required under *Lusardi* to obtain conditional certification. The three declarations provided by Plaintiffs suffice to show that aggrieved individuals exist, that they are similarly situated to the plaintiffs in relevant respects, and that those individuals want to opt in to the lawsuit. *See Aguirre v. SBC Comms., Inc.*, No. H–05–3198, 2006 WL 964554, at *6 (S.D. Tex. April 11, 2006). Plaintiffs have provided the declaration of Greg Edel, one of the plaintiffs who filed the Complaint on January 28, 2016. The other two declarants, Aaron Michael Lowe and Tonnial Amos, opted in to the lawsuit in February and March, respectively. This case is therefore very similar to *Prater v. Commerce Equities Management Co.*, No. H-07-2349, 2007 WL 4146714, at *8 (S.D. Tex. Nov.

---

[3] *See, e.g.*, Miles Decl. ¶ 4; Domingues Decl. ¶ 4; Garcia Decl. ¶ 4; Orellana Decl. ¶ 4.

[4] *See, e.g.*, Miles Decl. ¶¶ 9, 12; Domingues Decl. ¶ 9; Krolcyzk Decl. ¶¶ 7-10; Garcia Decl. ¶ 9; Brady Decl. ¶ 10.

[5] *See, e.g.*, Miles Decl. ¶ 7 ("If you do it right and work hard, you can make a lot of money").

[6] *See, e.g.*, Miles Decl. ¶ 25; Domingues Decl. ¶ 23; Krolcyzk Decl. ¶ 24; Garcia Decl. ¶ 25; Brady Decl. ¶ 19.

[7] *See, e.g.*, Miles Decl. ¶ 23.

[8] *See, e.g.*, Miles Decl. ¶ 32; Orellana Decl. ¶ 32.

[9] *See, e.g.*, Miles Decl. ¶ 43; Domingues Decl. ¶¶ 48, 52; Krolcyzk Decl. ¶¶ 52, 55; Garcia Decl. ¶¶ 51, 54; Orellana Decl. ¶¶ 43, 47; Brady Decl. ¶ 41.

[10] *See, e.g.*, Miles Decl. ¶ 45; Domingues Decl. ¶ 53; Krolcyzk Decl. ¶ 50; Garcia Decl. ¶ 55; Orellana Decl. ¶ 40; Brady Decl. ¶ 37.

[11] *See, e.g.*, Miles Decl. ¶ 7; Domingues Decl. ¶¶ 7, 32; Krolcyzk Decl. ¶¶ 34-37; Garcia Decl. ¶ 35; Orellana Decl. ¶ 8; Brady Decl. ¶ 26.

19, 2007), in which conditional certification was granted on the basis of affidavits from an original plaintiff and two plaintiffs who subsequently joined. By providing three declarations, two from individuals who joined after the initiation of the lawsuit, Plaintiffs have demonstrated that "at least a few similarly situated individuals seek to join the lawsuit." *Simmons v. T-Mobile USA, Inc.*, No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007). As such, Plaintiffs have made the minimal showing required for conditional certification.

### 1. The proposed class is sufficiently ascertainable.

Defendants argue that Plaintiffs' proposed class, which includes all individuals who worked as distributors and did not hire any assistants or helpers, cannot be certified because it is not ascertainable. Ascertainability is a concept borrowed from class action litigation under Federal Rule of Civil Procedure 23. Although Rule 23 does not govern FLSA collective actions, many courts have adopted Rule 23 procedures in managing FLSA collective actions. *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 721 (E.D. La. 2008).

The Fifth Circuit has held that a Rule 23 class must be "adequately defined and clearly ascertainable." *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007). A class is ascertainable if "the general outlines of the membership of the class are determinable at the outset of the litigation." 7A Wright, Miller & Kane, *Federal Practice and Procedure* § 1760 (3d ed.). "In keeping with the liberal construction to be given the rule, it has been held that the class does not have to be so ascertainable that every potential member can be identified at the commencement of the action." *Id*. Courts have held that a class is sufficiently ascertainable if it is circumscribed by "some objective set of criteria." *Hendrix v. Faulkner*, 525 F. Supp. 435, 442 (N.D. Ind. 1981) (affirmed and vacated in part on other grounds) (citing *Carpenter v. Davis*, 424 F.2d 257, 260 (5th Cir.

1970)). Courts have also held that a class defined by the contested practices of the defendant is sufficiently ascertainable. *Lewis v. Tully*, 96 F.R.D. 370, 377 (N.D. Ill. 1982).

Defendants first argue that the proposed class is not sufficiently ascertainable because Plaintiffs have not defined what qualifies as having "hired" any "assistants" or "helpers." (Doc. No. 50 at 18-19.) The Court does not believe that there will be great controversy over this issue. After all, potential plaintiffs weighing whether to opt in to the lawsuit likely know whether or not they hired assistants or helpers.

Next, Defendants argue that there is no way to determine whether a distributor hired any assistants or helpers without obtaining individualized testimony from every potential class member, since Flowers Baking Co. of Houston does not keep records of which distributors use assistants or helpers. *Id*. at 19 Defendants argue that the need to obtain individualized testimony makes the class unascertainable. *Id*. This argument, however, misunderstands the ascertainability standard. There is no requirement that the class be defined such that "any member can be presently ascertained." *Carpenter*, 424 F.2d at 260. Rather, the class must be defined "so as to enable the court to determine whether a particular individual is a member of the class." *Wagner v. Central La. Elec. Co., Inc.*, 102 F.R.D. 196, 197 (E.D. La. 1984). Various courts have found that a proposed class satisfied the ascertainability standard even though individualized testimony would be required to identify class members. *See, e.g.*, *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 241 F.R.D. 185 (S.D.N.Y. 2007) (class of all persons who owned real property in the vicinity of a service station and suffered legally cognizable injury due to contamination (including interference with the quiet enjoyment of their property) was sufficiently ascertainable); *Norwood v. Raytheon Co.*, 237 F.R.D. 581 (W.D. Tex. 2006) (class of all persons who suffered certain injuries from working on radars designed, manufactured, or

marketed by defendants was sufficiently ascertainable); *Cruz v. Califano*, 78 F.R.D. 314 (E.D. Pa. 1978) (class of Hispanic applicants who were unable to read English and were denied benefits was sufficiently ascertainable). Because the determination of which distributors hired assistants or helpers will be relatively straightforward, the class is ascertainable even though Defendants cannot identify those distributors without individualized testimony.

## 2. The possibility that an FLSA exemption applies does not foreclose collective treatment.

Defendants raise two exemptions to the FLSA which may be relevant to this case. The first is the Motor Carrier Act (MCA) exemption, which exempts from overtime requirements "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of [the Motor Carrier Act,] section 31502 of Title 49." 29 U.S.C. § 213(b)(1). The MCA exemption applies only to employees who drive vehicles over 10,000 pounds. 49 U.S.C. § 31132(1)(A); *Albanil v. Coast 2 Coast, Inc.*, 838 F.3d 442, 448 (5th Cir. 2016). In order for the MCA exemption to apply: (1) the employer must be engaged in interstate commerce, *Songer v. Dillon Resources, Inc.*, 618 F.3d 467, 472 (5th Cir. 2010), and (2) the employee must "engage in activities of a character directly affecting the safety of operation of motor vehicles…in interstate…commerce." 29 C.F.R. § 782.2(a). Defendants argue that the determination of whether the MCA exemption applies will require highly individualized inquiries about the weight of distributors' vehicles and the nature of their work. (Doc. No. 50 at 20.) As discussed above, however, the need for individualized inquiries does not foreclose collective treatment.

Second, Defendants raise the outside sales exemption, which exempts from overtime requirements "any employee employed…in the capacity of outside salesman." 29 U.S.C. § 213(a)(1). This includes any employee whose primary duty is making sales or obtaining orders

10

or contracts and who is customarily and regularly engaged away from the employer's place of business in performing such primary duty. 29 C.F.R. § 541.500(a). Outside sales work must be distinguished from "promotion work" as defined in 29 C.F.R. § 541.503. An employee is engaged in promotion work if, for example, she "visits chain stores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, sets up displays and consults with the store manager when inventory runs low, but does not obtain a commitment for additional purchases." 29 C.F.R. § 541.503(c). Such promotion work is not exempt from the FLSA's overtime requirements. *Id.* Drivers who both deliver and sell products fall within the outside sales exemption "only if the employee has a primary duty of making sales." 29 C.F.R. § 541.504(a). Factors that a court may use to determine whether a driver's primary duty is making sales include, but are not limited to: "a comparison of the driver's duties with those of other employees engaged as truck drivers and as salespersons; possession of a selling or solicitor's license when such license is required by law or ordinances; presence or absence of customary or contractual arrangements concerning amounts of products to be delivered; description of the employee's occupation in collective bargaining agreements; the employer's specifications as to qualifications for hiring; sales training; attendance at sales conferences; method of payment; and proportion of earnings directly attributable to sales." 29 C.F.R. § 541.504(b). 29 C.F.R. § 541.504(c)-(d) provide several examples of drivers who may or may not qualify as exempt outside sales employees.

Defendants argue that distributors' primary duty is making sales. (Doc. No. 50 at 21.) If Defendants are correct, then distributors are exempt from the FLSA's overtime provisions even if they are employees instead of independent contractors. This argument goes to the merits of the case, not to the appropriateness of collective treatment, so it should not be considered at this

stage.[12] Defendants also argue that the individualized inquiries required under the outside sales exemption make collective action inappropriate. (Doc. No. 50 at 21.) As we have seen, the need for individualized inquiries has no bearing on the appropriateness of collective treatment. Therefore, the possible applicability of the outside sales exemption to some distributors does not defeat Plaintiffs' argument for collective treatment.

### B.  Scope of the class

If the proposed class definition includes alleged employees who are not similarly situated, the Court has the power to modify an FLSA collective action definition on its own. *Dreyer v. Baker Hughes Oilfield Operations, Inc.,* CIV. A. H–08–1212, 2008 WL 5204149, at *3 (S.D.Tex. Dec.11, 2008) (citing *Baldridge v. SBC Commc'ns, Inc.,* 404 F.3d 930, 931–32 (5th Cir. 2005)). Here, Plaintiffs have asked for certification of a class that includes "all individuals who, at any point, during the past three years prior to the filing of this lawsuit, performed work for Defendants as distributors and who did not receive overtime pay and who did not hire any assistants or helpers." (Doc. No. 45 at 8). Defendants argue that, if a class is conditionally certified, it should be limited to two warehouses. (Doc. No. 50 at 22-24.)

Flowers Baking Co. of Houston has 19 warehouses in Texas. Lawson Decl. ¶¶ 3-4. Each warehouse has a different Branch Sales Manager who serves as the distributors' primary point of contact with Flowers Baking Co. of Houston. *Id*. ¶ 3. The three opt-in Plaintiffs remaining in the case worked in just two of those warehouses: Cripple Creek and Almeda (also known as Houston

---

[12] Even if this were an appropriate question for this stage of the case, Plaintiffs' declarations suggest that not all distributors have a primary duty of making sales. The declarations state that "Flowers retains the authority to enter into contracts according to terms it negotiates without my input," that "[t]he terms of the sales are negotiated between Flowers and its retail customers and are outside of my control," and that "customers pay Flowers directly and then I get paid by Flowers." Amos Decl. ¶¶ 5, 8-9. These statements support a plausible argument that some distributors do not fall within the outside sales exemption.

WH (Anagnost Rd)). As such, Defendants argue that the class should be limited to those two warehouses, rather than allowing notice to be issued to distributors in all 19 warehouses. In support of these arguments, Defendants cite numerous cases which have held that alleged FLSA violations at one of a company's multiple locations are not typically sufficient to support company-wide notice. *See* Doc. No. 50 at 22-24.

Defendants have not, however, explained why distributors' status as employees or independent contractors might vary by warehouse. Defendants do not specify what role the Branch Sales Manager plays or how it might affect distributors' status. The employees in the cases Defendants cite—manual laborers in industrial manufacturing yards, restaurant workers, bartenders, call center workers, etc.—all had a fixed workplace, and presumably a management structure that was tied to that workplace. By contrast, the distributors in this case do not work *in* the warehouse. The warehouse merely serves as the point of contact with Defendants. It may be the case that the management structure for a distributor is tied to the particular warehouse out of which the distributor operates, making the warehouse structure functionally similar to a single restaurant with multiple branches. But it is not intuitive that that would be the case, and Defendants have not alleged any facts to support that idea. Moreover, one of the Defendants' declarants (who alleged facts consistent with independent contractor status) operated out of the Almeda warehouse. Orellana Decl. ¶ 11. This fact undermines the argument that the particular warehouse is relevant to whether distributors were employees or independent contractors.

### C. Proposed notice

Finally, Defendants make several objections to Plaintiffs' proposed notice. (Doc. No. 50 at 24-25.) The parties should confer to draft a new proposed notice that is acceptable to both sides.

## IV.  CONCLUSION

For the reasons set forth above, Plaintiffs' Second Amended Motion for Conditional Certification (Doc. No. 45) is **GRANTED**. The parties are hereby ordered to confer on a new proposed notice acceptable to both sides.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 13th day of December, 2016.

_____
HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE